# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| **CODY LICON**, Individually and For Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> **BOS SOLUTIONS, INC.**, <br><br> Defendant. | Case No. 1:19-cv-1130 <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) <br><br> CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Cody Licon brings this lawsuit against BOS Solutions, Inc. for failing to pay overtime as required by the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act (NMMWA), NMSA § 50-4-22 *et seq.*

2. Licon, and the other BOS workers like him, regularly worked more than 40 hours in a week.

3. But BOS did not pay these workers overtime as required by the FLSA and NMMWA.

4. Instead, BOS improperly classified Licon and other workers similarly situated to him as independent contractors and paid them a day rate with no overtime compensation.

5. This class/collective action seeks the unpaid overtime and other damages owed to these workers.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. The Court also has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act. 28 U.S.C. § 1332(d).

8. The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10. Licon worked for BOS in this District and Division.

11. Specifically, Licon worked for BOS in and around New Mexico.

12. Licon regularly worked overtime for BOS in and around New Mexico.

13. Despite regularly working over 40 hours, BOS paid Licon a day rate with no overtime for the work he did for BOS in and around New Mexico.

## THE PARTIES

14. Licon worked for BOS as a Solids Control Technician from approximately November 2016 until October 2017.

15. Licon worked for BOS in Texas and New Mexico.

16. Licon's consent to be a party plaintiff is attached as <u>Exhibit A</u>.

17. Throughout his employment, BOS classified Licon as an independent contractor and paid him a day rate with no overtime compensation.

18. In reality, Licon's relationship with BOS was an employer/employee relationship.

19. Licon bring this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid under BOS's day rate system.

20. BOS paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek as required by the FLSA and the NMMWA.

21. The class of similarly situated employees sought to be certified is defined as follows:

> **All oilfield workers who worked for or on behalf of BOS who were classified as independent contractors and paid a day rate at any time in the last 3 years** (FLSA Class).

22. Plaintiff Licon also seeks class certification of such a class pursuant to FED. R. CIV. P. 23 under the NMMWA, as follows:

> **All oilfield workers who worked for or on behalf of BOS in New Mexico who were classified as independent contractors and paid a day rate at any time in the last 3 years** (New Mexico Class).

23. Members of the FLSA and New Mexico Classes will be collectively referred to as the "Putative Class Members."

24. Defendant **BOS Solutions, Inc.** is corporation doing business throughout the United States, including Pennsylvania and New Mexico. BOS may be served with process by serving its registered agent for service of process, **Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.**

### COVERAGE UNDER THE FLSA

25. At all relevant times, BOS has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all relevant times, BOS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. At all relevant times, BOS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that BOS has had and has an annual gross volume

of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

28. At all relevant times, Licon and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

29. BOS treated Licon and the Putative Class Members as employees and uniformly dictated the pay practices applied to Licon and the Putative Class Members.

30. BOS's misclassification of Licon and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or the NMMWA.

## FACTS

31. BOS says it is "the leading provider of Solids and Liquids Waste Separation Solutions" operating throughout the United States, including in New Mexico.

32. To complete its business objectives, BOS hires personnel, such as Licon, to perform solids control services.

33. BOS labels Licon and the Putative Class Members to be contractors.

34. But BOS does not hire these workers on a project-by-project basis.

35. Rather, BOS hires and treats these workers just like regular, even if sometimes short term, employees.

36. Many of these individuals worked for BOS on a day rate basis (without overtime pay).

37. These day rate workers make up the proposed Putative Class.

38. For example, Licon worked for BOS as a Solids Control Technician from approximately November 2016 until October 2017.

39. Throughout his employment, BOS classified him as an independent contractor and paid him on a day rate basis.

40. As a Solids Control Technician, Licon spent his time separating drilling fluid from the solids crushed by the drill bit and carried up to the surface in the drilling fluid.

41. Licon did not have any supervisory duties.

42. Licon did not hire for fire employees.

43. Licon did not exercise discretion and judgment as to matters of significant.

44. Licon was a blue-collar worker.

45. BOS paid Licon and the Putative Class Members under its day rate pay scheme.

46. Licon and the Putative Class Members do not receive a salary.

47. If Licon and the Putative Class Members did not work, they did not get paid.

48. Licon and the Putative Class Members receive a day rate.

49. Licon and the Putative Class Members do not receive overtime pay.

50. This is despite the fact Licon and the Putative Class Members often worked more than 10 hours a day, for as many as 7 days a week, for weeks at a time.

51. Although Licon typically worked up to 7 days a week, for 10 or more hours a day, he did not receive any overtime pay.

52. Licon and the Putative Class Members received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

53. Without the job performed by Licon and the Putative Class Members, BOS would not be able to complete its business objectives.

54. Licon and the Putative Class Members relied on BOS for work and compensation.

55. Licon and the Putative Class Members worked in accordance with the schedule set by BOS and/or its clients.

56. Licon and the Putative Class Members cannot subcontract out the work they are assigned by BOS.

57. Licon and the Putative Class Members must follow BOS and/or its clients's policies and procedures.

58. Licon and the Putative Class Members's work must adhere to the quality standards put in place by BOS and/or its clients.

59. Licon and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

60. Licon and the Putative Class Members did not market their services while employed by BOS.

61. Licon and the Putative Class Members worked exclusively for BOS during the relevant period.

62. Licon and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

63. BOS and/or its clients set Licon and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for BOS.

64. At all relevant times, BOS maintained control, oversight, and direction of Licon and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

65. Licon's work schedule is typical of the Putative Class Members.

66. BOS controls Licon and the Putative Class Members's pay.

67. Likewise, BOS and/or its clients control Licon and the Putative Class Members's work.

68. Licon and the Putative Class Members's work must adhere to the quality standards put in place by BOS and/or its clients.

69. Licon and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

70. BOS knows Licon and the Putative Class Members work for 10 or more hours a day, for as many as 7 days a week.

71. BOS's records reflect the fact Licon and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

72. Licon and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

73. Instead, Licon and the Putative Class Members are paid on a day rate basis.

74. BOS and/or its clients set these workers's schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its (or its clients's) policies and procedures.

75. BOS controls Licon and the Putative Class Members's opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

76. While working for BOS, BOS controlled all the significant or meaningful aspects of the job duties Licon and the Putative Class Members perform.

77. BOS exercises control over the hours and locations Licon and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

78. Even when Licon and the Putative Class Members work away from BOS's offices without the constant presence of BOS supervisors, BOS still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

79. Licon and the Putative Class Members do not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

80. BOS (and/or its clients) make these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Licon and the Putative Class Members work.

81. Licon and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

82. The daily and weekly activities of Licon and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by BOS.

83. BOS prohibits Licon and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Licon and the Putative Class Members to follow BOS's (or its clients's) policies, procedures, and directives.

84. All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

85. All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

86. All of the Putative Class Members work in excess of 40 hours each week.

87. BOS uniformly denies Licon and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

88. Licon and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

89. BOS's day rate policy violates the FLSA because it deprives Licon and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

90. BOS knew Licon and the Putative Class Members worked more than 40 hours a week.

91. BOS knew, or showed reckless disregard for whether, the Putative Class Members were entitled to overtime under the FLSA and NMMWA.

92. Nonetheless, BOS did not pay Licon and the Putative Class Members overtime.

93. BOS knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and the NMMWA.

### FLSA VIOLATIONS

94. Licon brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

95. BOS violated, and is violating, the FLSA by failing to pay Licon and the Putative Class Members overtime.

96. BOS misclassified the Licon and the Putative Class Members for purposes of the FLSA overtime requirements.

97. BOS cannot demonstrate Licon and the Putative Class Members are exempt from overtime under the administrative exemption.

98. BOS cannot demonstrate Licon and the Putative Class Members are exempt from overtime under the executive exemption.

99. BOS cannot demonstrate Licon and the Putative Class Members are exempt from overtime under the professional exemption.

100. BOS cannot demonstrate Licon and the Putative Class Members are exempt from overtime under the highly compensated exemption.

101. BOS misclassified the Plaintiff and Putative Class Members as contractors.

102. BOS failed to guarantee the Plaintiff and Putative Class Members a salary.

103. BOS failed to pay the Plaintiff and Putative Class Members overtime.

104. BOS paid the Plaintiff and Putative Class Members a day rate.

105. BOS knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

106. BOS's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

107. Accordingly, Licon and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

### NMMWA VIOLATIONS

108. Plaintiff Licon brings this claim under the NMMWA as a Rule 23 class action.

109. The conduct alleged violates the NMMWA (NMSA § 50-4-22 *et seq*).

110. At all relevant times, BOS was subject to the requirements of the NMMWA.

111. At all relevant times, BOS employed Plaintiff Licon and the New Mexico Class Members as "employees" within the meaning of the NMMWA.

112. The NMMWA requires employers like BOS to pay employees at 1.5 times the regular rate of pay for hours worked in excess of 40 hours in a week.

113. Licon and the New Mexico Class Members are entitled to overtime pay under the NMMWA.

114. BOS has and had a policy and practice of misclassifying Plaintiff Licon and the New Mexico Class Members as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 per workweek.

115. Plaintiff Licon and the New Mexico Class Members seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

116. Plaintiff Licon and the New Mexico Class Members also seek recovery of attorneys's fees, costs, and expenses of this action, to be paid by BOS, as provided by the NMMWA.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

117. The illegal pay practices BOS imposed on Licon were likewise imposed on the Putative Class Members.

118. Dozens of individuals were victimized by BOS's pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

119. Numerous other individuals who worked with Licon indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

120. Based on his experiences and tenure with BOS, Licon are aware that BOS's illegal practices were imposed on the Putative Class Members.

121. The Putative Class Members were all improperly classified as independent contractors and not afforded overtime compensation when they worked in excess of 40 hours per week.

122. BOS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

123. Licon's experiences are therefore typical of the experiences of the Putative Class Members.

124. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

125. Licon have no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Licon have an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

126. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

127. Absent this action, many Putative Class Members likely will not obtain redress of their injuries, and BOS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

128. Furthermore, even if some of the Putative Class Members could afford individual litigation against BOS, it would be unduly burdensome to the judicial system.

129. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

130. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

131. Among the common questions of law and fact are:

   a. Whether BOS employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and the NMMWA;

   b. Whether the Putative Class Members were improperly misclassified as independent contractors;

   c. Whether BOS's decision to classify the Putative Class Members as independent contractors was made in good faith;

   d. Whether BOS's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   e. Whether BOS's violation of the FLSA and the NMMWA was willful; and

   f. Whether BOS's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

132. Licon's claims are typical of the claims of the Putative Class Members.

133. Licon and the Putative Class Members sustained damages arising out of BOS's illegal and uniform employment policy.

134. Licon know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

135. Even if the issue of damages were somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

136. Licon demands a trial by jury.

## RELIEF SOUGHT

137. WHEREFORE, Licon prays for judgment against BOS as follows:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b. For an Order pursuant to Section 16(b) of the FLSA finding BOS liable for unpaid back wages due to Licon and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

    c. For an Order designating New Mexico Class as a class action pursuant to Fed. R. Civ. P. 23;

    d. For an Order appointing Licon and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

    e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

    f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Richard J. Burch*
   **Richard J. (Rex) Burch**
   Texas Bar No. 24001807 (admitted in D.NM.)
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Taylor A. Jones**
Texas Bar No. 24107823
(*pro hac vice application forthcoming*)
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**